[Nos. 43028-9-I; 43397-1-I. Division One. April 10, 2000.]

SHERILYN WELLS, *Appellant*, v. WESTERN WASHINGTON
GROWTH MANAGEMENT HEARINGS BOARD, ET AL.,
*Respondents*.

WHATCOM COUNTY, ET AL., *Respondents*, v. WESTERN
WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD, ET
AL., *Respondents*, SHERILYN WELLS, ET AL., *Appellants*.

*Sherilyn Wells*, pro se.

*Roger L. Ellingson,* for appellants Nathan Kronenberg and Sherilyn Wells.

*Christine O. Gregoire, Attorney General,* and *Marjorie T. Smitch, Assistant*; and *Alan D. Copsey,* for Western Washington Growth Management Hearings Bd.

*Kurt A. Denke,* for Lee and Barbara Denke.

*David S. McEachran, Prosecuting Attorney,* and *Karen Frakes, Deputy*; and *Matthew B. Edwards* and *Alexander W. Mackie* of *Owens Davies Mackie, P.S.,* for Whatcom County.

*Robert A. Carmichael,* for Birch Bay Water & Sewer Dist.

*Brian L. Hansen,* for Whatcom County Water & Sewer Dist. No. 13.

*Mark J. Lee* and *Robert M. Tull* of *Langabeer Tull & Lee, P.S.,* for Sudden Valley Community Ass'n.

*Melody B. McCutcheon,* for City of Blaine.

*David A. Bricklin* and *Michael W. Gendler* on behalf of Friends of Skagit County, amicus curiae.

GROSSE, J. — In this action brought under the Growth Management Act, chapter 36.70A RCW (GMA), we must decide three issues which we resolve as follows: First, the GMA provides that a comprehensive plan and development regulations are presumptively valid upon adoption. This presumption applies even though Whatcom County had previously gotten a declaration from the Western Washington Growth Management Hearings Board declaring certain of its interim urban growth area designations and associated regulations invalid. The burden of rebutting this presumption is on the party challenging the validity of the comprehensive plan and development regulations. While

the presumption may be overcome rather easily in the circumstance where, as is alleged here, the plan and regulations contain provisions identical to those previously held to be invalid, it nevertheless applies. Once the petitioners have overcome the presumption, the GMA places the burden on the local government to demonstrate that its revised plan and regulations "no longer substantially interfere with the fulfillment of the goals" of the GMA.

Second, to establish "participation" standing before a growth management hearings board, as the GMA requires, a party must show that its "participation" before the local government was reasonably related to the issues raised before the local government regarding "the matter" on which review is requested.

Finally, an agency's failure to serve all parties to the proceedings before it with its final order does not deprive the superior court of subject matter jurisdiction over a petition for review of that order. *Union Bay Preservation Coalition v. Cosmos Development & Administration Corp.*[1] does not require dismissal where, as here, all parties were served with the petition for review.

Significantly, no party has raised any persuasive challenge to the substantive portions of the decision of the Whatcom County Superior Court. Thus, we will not disturb the trial court's order remanding the case to the Western Washington Growth Management Hearings Board (hereinafter Board).

This case arises from two separate appeals of the Board's decision concluding that portions of Whatcom County's comprehensive plan and development regulations were invalid under the GMA. Whatcom County and other parties petitioned for review of the Board's Final Decision and Order in Whatcom County Superior Court. The State, acting through the Director of the Department of Community, Trade, and Economic Development (CTED), intervened. The trial court reversed and remanded the Board's deci-

---

[1]*Union Bay Preservation Coalition v. Cosmos Dev. & Admin. Corp.*, 127 Wn.2d 614, 902 P.2d 1247 (1995).

sion. The CTED, Sherilyn Wells, and Nathan Kronenberg appeal. Wells filed a separate petition for review of the Board's order in Skagit County Superior Court. That court dismissed her petition and she appeals.

The CTED raises two issues of statutory interpretation. First, it contends that the Board correctly required Whatcom County to bear the burden of proving that revised portions of the comprehensive plan and development regulations addressing the same subjects as interim development regulations previously found invalid did not substantially interfere with the goals of the GMA. The CTED also argues that "participation standing" under RCW 36.70A.280(2)(b) is not issue-specific.

Wells and Kronenberg contend that the court did not have subject matter jurisdiction over the petitions for review at the time it issued the order requiring notices of appearance because one of the alleged parties to the proceedings before the Board had not yet been served with the Board's final order. They also argue that the court abused its discretion and exceeded its authority by issuing and enforcing an order requiring parties who planned to participate in the appeal of the Board's order to file notices of appearance.

Wells' petition in Skagit County Superior Court alleged only one error by the Board. The Skagit County Superior Court granted Whatcom County's motion to dismiss Wells' petition because she failed to raise that issue before the Board. She challenges this decision, arguing that Whatcom County's motion to dismiss her petition was premature because Whatcom County filed it before the Board served its final order on all parties of record.

For the following reasons, we affirm the superior court's decision reversing and remanding the Board's Final Decision and Order.

## PROCEDURAL HISTORY
### Proceedings Before the Growth Management Hearings Board

This case arises from challenges to Whatcom County's

actions under the GMA. In *Whatcom Environmental Council v. Whatcom County*, the Board determined that portions of the county zoning code applying to rural areas and included in Whatcom County's Interim Urban Growth Area (IUGA) ordinances were invalid.[2] In *C.U.S.T.E.R. Ass'n v. Whatcom County*, the Board determined that several of Whatcom County's IUGAs were invalid.[3]

Whatcom County did not revise its interim ordinances and regulations in response to these determinations of invalidity. Rather, in May 1997, Whatcom County adopted a new comprehensive plan and "associated development regulations." In June 1997, it filed a motion requesting the Board to rescind the determinations of invalidity based on the new comprehensive plan and associated regulations. The Board modified but did not rescind its previous findings of invalidity.

In July 1997, the Board received petitions from four parties, including Wells, requesting review of the new comprehensive plan and development regulations. The Board consolidated these petitions into what we refer to as the "*Wells* case."[4] Whatcom County moved to join the two prior cases resulting in orders of invalidity with the *Wells* case. The Board declined to consolidate the cases, but decided that they were "allied and need be coordinated as we consider the cases."[5]

The Board denied a motion to limit petitioners' standing to the issues they raised during Whatcom County's adoption process. Rejecting Whatcom County's argument that the GMA imposes an issue-specific standing requirement, it

[2]*Whatcom Envtl. Council v. Whatcom County*, No. 94-2-0009, Western Wash. Growth Mgmt. Hrg's Bd. Final Order (Nov. 9, 1994).

[3]*C.U.S.T.E.R. Ass'n v. Whatcom County*, No. 96-2-0008, Western Wash. Growth Mgmt. Hrg's Bd. Final Decision & Order (Sept. 12, 1996).

[4]The Board consolidated the cases under *Wells v. Whatcom County*, No. 97-2-0030c.

[5]*Wells v. Whatcom County*, No. 97-2-0030c, Western Wash. Growth Mgmt. Hrg's Bd. Order re: Motions, Including Motions to Intervene, Join Cases, and to Dismiss Certain Parties, at 6 (Nov. 5, 1997).

held that the petitioners had standing to pursue all the issues raised by the appeal.[6]

After extensive briefing and a hearing, the Board issued a Final Decision and Order (January 16, 1998).[7] The Board rescinded some of its earlier determinations of invalidity but continued to find three urban growth areas, all but two of the designated rural areas, and various zoning regulations invalid.

## Proceedings in Skagit County Superior Court

In February 1998, Wells filed a petition for review in Skagit County Superior Court arguing that the Board should have suspended permits for single-family residences in the Whatcom County watershed. After filing her petition, she discovered that she had failed to serve the City of Nooksack (Nooksack) with her petition because she relied on the Board's certificate of service of its final order, which did not list Nooksack. Wells amended her petition to add Nooksack on May 8, 1998. The Board then served its final order on Nooksack.

Whatcom County moved to dismiss Wells' petition after she amended it to include Nooksack as a party, but before the Board served the city with its final order. The court granted Whatcom County's motion based on Wells' failure to adequately raise before the Board the substantive issue she was attempting to raise on review.

## Proceedings in Whatcom County Superior Court

Whatcom County, Birch Bay Water & Sewer District, and Whatcom County Water & Sewer District No. 13 each petitioned for review of the Board's final order in Whatcom

---

[6]The Board did dismiss Whatcom Resource Watch because it did not exist at the time of Whatcom County's adoption process.

[7]On February 17, 1998, the Board did issue an Order re: Motions to Reconsider the Final Decision and Order Entered January 16, 1998, and Amended January 22, 1998 but said order contained minor revisions to the Final Order and Decision that are not relevant to the issues in this case.

County Superior Court. The court consolidated the three cases and permitted the CTED to intervene in the proceedings.

On April 17, 1998, the court issued an order requiring all responding parties in the case to file a written notice of appearance within 30 days of entry of the order if they wished to continue to participate in the proceedings. Nathan Kronenberg did not file a notice of appearance. On June 25, 1998, he filed a petition for review but did not take the steps necessary to consolidate it with this case. On July 28, 1998, Kronenberg filed a notice of appearance in this case. He later moved for revision of the court's April 17 order and for a continuance to allow him to prepare a responsive brief. In support of these motions, he argued that the trial court did not have subject matter jurisdiction over the petitions on April 17 and did not have authority to issue the order. The court denied Kronenberg's motion to shorten time, and his motions for revision and a continuance were not heard until after trial when the trial court denied both motions.

Following trial, the court issued an order remanding the case to the Board. It held that the Board misinterpreted RCW 36.70A.280(2)(b), the GMA's "participation standing" provision and that the GMA required the Board to apply a presumption of validity to its review of the comprehensive plan and development regulations. It concluded that the Board's determinations of invalidity were based on an error of law and were not supported by substantial evidence and made several findings that Whatcom County's decisions were supported by substantial evidence. The court remanded the case to the Board with instructions to reevaluate the standing of various parties and to apply a presumption of validity to the comprehensive plan and development regulations. It also issued an order lifting the Board's determinations of invalidity.

The CTED, Nathan Kronenberg, and Sherilyn Wells appeal the Whatcom County Superior Court's order remanding the case. Wells also appeals Skagit County Superior

Court's order dismissing her petition. Whatcom County, Trillium Corporation, Birch Bay Water & Sewer District, and Whatcom County Water & Sewer District No. 13 filed responsive briefs. Friends of Skagit County filed an amicus brief on the issue of standing. We accepted that brief and have also considered the responses to it.

## DECISION
### I. Burden of Proof

Under RCW 36.70A.320(1), comprehensive plans, development regulations, and any amendments to them are deemed valid upon adoption. If the growth management hearings board finds on review that a comprehensive plan or development regulations "would substantially interfere with the fulfillment of the goals" of the GMA, it may determine that part or parts of the plan or regulation are invalid.[8]

In general, a petitioner challenging a GMA plan or regulation must demonstrate to the growth management hearings board that it is not in compliance with the statute.[9] But when a local government is subject to a determination of invalidity, it bears the burden under RCW 36.70A.320(4) of "demonstrating [before the growth management hearings board] that the ordinance or resolution it has enacted in response to the determination of invalidity will no longer substantially interfere with the fulfillment of the goals of this chapter . . . ."

In this case, the Board ruled that Whatcom County had the burden of demonstrating that the portions of its new comprehensive plan and development regulations related to those that had been declared invalid earlier no longer substantially interfered with the goals of the GMA. It further ruled that until Whatcom County met this burden it would not presume the relevant portions of the new plan valid.

---

[8]RCW 36.70A.302(1).

[9]RCW 36.70A.320(2).

On review of the Board's decision, Whatcom County argued that it adopted the comprehensive plan and development regulations to satisfy independent requirements of the GMA, not in response to the previous orders of invalidity. The court agreed. In its oral decision, the court explained its ruling:

> In this case here the comprehensive plan is valid upon—the comprehensive plan is presumed valid upon adoption. . . .
>
> . . . .
>
> And Paragraph 4 would refer to other ordinances or resolutions enacted solely and in specific response to a declaration of invalidity. And with that I find no inconsistency whatsoever. . . .

We agree that the Board should have applied the presumption of validity to the new comprehensive plan and development regulations. However, we disagree with Whatcom County's argument that its newly adopted comprehensive plan could never be considered responsive to the prior determinations of invalidity.[10]

█ The issue presented is one of statutory interpretation which we review de novo.[11] We resort to methods of statutory construction if a statute is ambiguous;[12] that is, if it is susceptible to more than one reasonable interpreta-

---

[10]Whatcom County raises a preliminary issue. It argues that the question of whether the Board applied the correct presumption is moot because no party to this appeal challenges the bottom line: the trial court's order reversing the Board's substantive decisions. We agree. *See Westerman v. Cary*, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994). However, an appellate court has discretion to decide an appeal which has otherwise become moot when it involves "matters of continuing and substantial public interest[.]" *Westerman*, 125 Wn.2d at 286 (quoting *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). *See also Hart v. Department of Soc. & Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988). Because the issue presented is of a public nature, the issue is likely to recur, an authoritative determination is desirable to provide future guidance to public officers, and the briefing is thorough, we decide the question of statutory interpretation.

[11]*Rettkowski v. Department of Ecology*, 128 Wn.2d 508, 514-15, 910 P.2d 462 (1996).

[12]*Rettkowski*, 128 Wn.2d at 515.

tion.[13] RCW 36.70A.320 is clear about a newly adopted comprehensive plan and its implementing development regulations:

**Presumption of validity—Burden of proof—Plans and regulations.** (1) Except as provided in subsection (5) of this section, comprehensive plans and development regulations, and amendments thereto, adopted under this chapter are presumed valid upon adoption.

(2) Except as otherwise provided in subsection (4) of this section, the burden is on the petitioner to demonstrate that any action taken by a state agency, county, or city under this chapter is not in compliance with the requirements of this chapter.

(3) In any petition under this chapter, the board, after full consideration of the petition, shall determine whether there is compliance with the requirements of this chapter. In making its determination, the board shall consider the criteria adopted by the department under RCW 36.70A.190(4). The board shall find compliance unless it determines that the action by the state agency, county, or city is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of this chapter.

(4) A county or city subject to a determination of invalidity made under RCW 36.70A.300 or 36.70A.302 has the burden of demonstrating that the ordinance or resolution it has enacted in response to the determination of invalidity will no longer substantially interfere with the fulfillment of the goals of this chapter under the standard in RCW 36.70A.302(1).

(5) The shoreline element of a comprehensive plan and the applicable development regulations adopted by a county or city shall take effect as provided in chapter 90.58 RCW.

■ The statute clearly states that comprehensive plans are valid upon adoption, and subsection (4) shifts the burden of proof to the local government only under certain circumstances. Contrary to the CTED's argument, these provisions are not mutually exclusive. Subsection (4) cre-

---

[13]*Vashon Island Comm. for Self-Gov't v. State Boundary Review Bd.*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995).

ates an exception to subsection (2). Together they place the burden of proof on the petitioner where there is no prior determination of invalidity. Where there has been an invalidity determination concerning issues that are also included in the new plan, the exception found in subsection (4) shifts the burden, on those provisions only, to the local government. This scheme does not conflict with the presumption of validity.

Here, the Board could properly find that Whatcom County adopted portions of its plan and regulations in response to the earlier determination of invalidity. That finding, if supported by the record, would invoke the burden-shifting provision of RCW 36.70A.320(4) as to those portions of the plan which the Board found were adopted in response to the determination of invalidity. Petitioners would, however, retain the burden of proving the remainder of the plan was not in compliance with the GMA because the remainder of the plan is presumed valid under RCW 36.70A.320(1).

Whatcom County's motion for rescission of the determination that its interim ordinances were invalid based on its comprehensive plan is not relevant to our resolution of the issue presented. Under the GMA, a local government can file a motion requesting that the growth management hearings board clarify, modify, or rescind a determination of invalidity.[14] The board must schedule a hearing on such a motion on an expedited basis.[15] However, the hearing simply presents an opportunity for the parties to "present information to the board to clarify the part or parts of the comprehensive plan or development regulations to which the final order applies."[16] It does not apply here because Whatcom County adopted a new comprehensive plan and

---

[14]RCW 36.70A.302(6).

[15]RCW 36.70A.302(6).

[16]RCW 36.70A.302(6).

regulations. The new plan and regulations supercede the interim ordinances, thus a new petition challenging the plan is necessary to obtain review by the Board.[17]

## II. Participation Standing

In the proceedings before the Board, Whatcom County challenged the standing of certain petitioners under RCW 36.70A.280(2)(b) which provides:

> A petition may be filed only by: . . . (b) a person who has participated orally or in writing before the county or city regarding the matter on which a review is being requested[.][18]

The Board rejected Whatcom County's argument that in order to have standing to raise an issue before the board, a petitioner must have "participated" before the local government on that issue. Thus, the Board concluded that all of the petitioners, with the exception of an organization that did not exist at the time Whatcom County adopted the ordinances at issue, had standing to raise the issues before the Board. Whatcom County successfully challenged that ruling before the superior court.

The CTED contends that the superior court adopted an issue-specific standing requirement. While the superior court did refer to its resolution of the standing issue as "issue-specific," the court actually defined a "matter" to mean

> a specific subject of concern brought to the Board in a petition

---

[17]RCW 36.70A.302(7) provides for review of amendments to previously invalidated portions of a comprehensive plan or development regulations. If the local government amends the plan or regulations at issue, the Board may modify or rescind the determination of invalidity following a compliance hearing if it finds that the plan or regulations will no longer substantially interfere with the fulfillment of the goals of the GMA. RCW 36.70A.302(7)(a). This section of the statute does not apply here because there are no amendments under consideration. We do not decide whether the presumption of validity applies in proceedings under this provision.

[18]RCW 36.70A.280(3) defines a "person" as "any individual, partnership, corporation, association, state agency, governmental subdivision or unit thereof, or public or private organization or entity of any character."

for review. For example, to have participation standing to challenge the resort/recreational subdivision designation at Columbia Valley and to raise legal issues to that designation, a petitioner must have specifically addressed that designation and raised that specific matter first before the County . . . .[19]

The court then set forth subjects that it found to be separate "matters" in this case. Those included general categories, such as "[e]ach development regulation alleged to be inconsistent with the comprehensive plan," as well as more specific categories, such as "[t]he basis of each of petitioners' concerns relating to each UGA. . . ."[20] Thus, the superior court actually defined a "matter" as something broader than a technical legal issue.

■ ■ We agree with the CTED that a "matter" is not equivalent to an "issue." First, the Legislature used the term "matter" in RCW 36.70A.280(2)(b) rather than the term "issue." Where the Legislature uses different terms in a statute, we presume that it intended to address different concerns.[21] The Legislature has impliedly distinguished between "issue" and "matter" in various sections of the GMA.[22] Second, all three growth management hearings boards have consistently rejected a requirement of issue-specific standing. The Legislature has not amended the statute to change the term "matter." Thus, we presume that it has acquiesced in the three growth management hearings boards' interpretation of the statute.[23] Third, when it amended the standing provision in 1996 to require "participation" rather than mere "appearance," the Legislature rejected a proposed amendment which would

[19]Order Remanding Case, at 8.

[20]Order Remanding Case, at 9.

[21]*State v. Talley*, 122 Wn.2d 192, 216, 858 P.2d 217 (1993).

[22]*See e.g.*, RCW 36.70A.290(1) (requiring that a petition for review by a board contain a "detailed statement of issues presented for resolution"); RCW 36.70A.290(3) (the board shall "set a time for hearing the matter").

[23]*See In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 780, 903 P.2d 443 (1995); *Bennett v. Hardy*, 113 Wn.2d 912, 928, 784 P.2d 1258 (1990).

have required petitioners to raise "issues" before the local government.[24] The House had passed an amendment containing the following language:

> The petitioner must demonstrate that it: Has participated in the public adoption process of the county or city regarding the matter on which a review is being requested; can demonstrate that each issue presented in the petition for review was presented by the petitioner on the record during the public adoption process; and can demonstrate the petitioner's interests will suffer specific and perceptible harm if the action of the county or city is not reviewed.[25]

But the Senate rejected this proposal,[26] thus further supporting our conclusion that the Legislature did not intend to require petitioners to raise specific legal issues during the local government planning process.

■ However, we also disagree with the argument made by the Friends of Skagit County and adopted by the CTED that "matter" is equivalent to "enactment." The Legislature did not use the word "enactment" in RCW 36.70A-.280(2)(b) either. The word "matter" is used in several sections of the GMA to refer to a case before the growth management hearings board, a board decision on appeal to the superior court, a moratorium, interim zoning map, interim zoning ordinance, or interim official control.[27] In contrast, an enactment is something that has been adopted. *Black's Law Dictionary* defines "enact" as "[t]o make into law by authoritative act[.]"[28] Clearly, a case before a growth management hearings board and a board decision on appeal are not "enactments." Thus, the Legislature intended "matter" to mean something different from "enactment."

---

[24] 1996 FINAL LEGISLATIVE REPORT, 54th Wash. Leg., 1995 3d Spec. Sess. & 1996 Reg. Sess., at 208.

[25] 2 HOUSE JOURNAL, 54th Wash. Leg., Reg. Sess., at 2165-66 (1996).

[26] SENATE JOURNAL, 54th Wash. Leg., Reg. Sess., at 1357-59 (1996).

[27] RCW 36.70A.290(3); RCW 36.70A.295(4)(b)(iii); RCW 36.70A.390.

[28] BLACK'S LAW DICTIONARY 546 (7th ed. 1999).

We conclude that it intended the word "matter" to refer to a subject or topic of concern or controversy.

■ We hold that the Central Puget Sound Growth Management Hearings Board's analysis in the *Alpine v. Kitsap County*[29] case sets the appropriate standard for determining whether a petitioner has participated with respect to a "matter" before a local government. In *Alpine*, the board stated:

> If a petitioner's participation is reasonably related to the petitioner's issue as presented to the Board, then the petitioner has standing to raise and argue that issue; if the petitioner's participation is not reasonably related to the petitioner's issue as presented to the Board, then the petitioner does not have standing to raise and argue that issue.[30]

The *Alpine* analysis indicates that the Central Puget Sound Growth Management Hearings Board intended to require a showing of some nexus between the petitioner's participation in the county process and the issues it raises before the growth management hearings board. We recognize that this approach leaves each growth management hearings board considerable discretion to determine whether the facts support the necessary connection in each case. For example, in *Alpine*, the Central Puget Sound Growth Management Hearings Board ruled that the S'Klallam Tribe had standing to raise the issue of whether

> *the requirements of RCW 36.70A.070 and .130 apply when a county adopts a UGA [urban growth area] after the deadline for adopting a Plan, and if so, does the Port Gamble UGA fail to comply with these requirements?*[31]

It concluded that the tribe's participation was reasonably related to this issue because the tribe sent a letter to the county stating that it opposed the UGA designation for Port Gamble and that:

---

[29]*Alpine v. Kitsap County*, No. 98-3-0032c, Central Puget Sound Growth Mgmt. Hrg's Bd. Order on Dispositive Motions (Oct. 7, 1998) *available at* www.gma boards.wa.gov.

[30]*Alpine v. Kitsap County, supra*, at 8.

[31]*Alpine v. Kitsap County, supra*, at 9.

If adequate justification is provided and Port Gamble is designated an urban growth area, the Tribe advises a tight but logical urban boundary line around only those limited growth areas capable of being served by the existing [sewer and water supply] system.[32]

Conversely, the Central Puget Sound Growth Management Hearings Board dismissed an issue relating to the consistency of Kitsap County's comprehensive plan with the plans of the adjoining county governments because the single letter that petitioner submitted to the county "contains no mention of Plan consistency with Mason and Jefferson Counties."[33]

We conclude that the *Alpine* approach furthers the GMA's goals of encouraging meaningful public participation in the local government planning process and achieving local government compliance with the GMA. Persons who wish to raise issues before a growth management hearings board should participate actively in the planning process for the geographic areas or subjects of interest to them. The GMA assumes the local government will have an opportunity to address those concerns before an appeal to the growth management hearings board. This facilitates the county's ultimate planning responsibility and avoids unnecessary appeals. However, it would be unrealistic given the time and resource constraints inherent in the planning process to require each individual petitioner to demonstrate to the growth management hearings board that he or she raised a specific legal issue before the board can consider it. The growth management hearings boards, with their expertise in these matters and their role as finders of fact, are best suited to decide whether, under the facts presented in a particular circumstance, a petitioner has established participation in a "matter."

The amici and the CTED contend that the *Alpine* decision represents a change in the law of standing as articu-

---

[32]*Alpine v. Kitsap County, supra,* at 9.

[33]*Alpine v. Kitsap County, supra,* at 9.

lated by all three growth management hearings boards. They note that the three boards have repeatedly stated that a "matter" is equivalent to an "enactment." However, while the growth management hearings boards have used that language, they actually analyze the question of whether a particular petitioner's participation before a local government justifies standing in the way the *Alpine* decision articulates the approach.[34]

Even assuming that the Central Puget Sound Growth Management Hearings Board's decision in *Alpine* represents a departure from prior board practice, we do not find persuasive the argument that the Legislature acquiesced in an earlier practice of equating "matter" with "enactment." The Legislature amended RCW 36.70A.280(2)(b) in 1996 to require "participation" instead of "appearance standing." The Central Puget Sound Growth Management Hearings Board discussed the purpose of the 1996 amendment in *McGowan v. Pierce County*, stating that the amendment demonstrated "the legislature's desire to require citizens to air their concerns to local government before the local government acts."[35] We conclude that the *Alpine* standard is consistent with the purpose of the amendment and the scheme embodied in the GMA.

Trillium Corporation makes several arguments based on an analogy between the proceedings before the Board and judicial review of agency decisions. We reject these arguments. It is clear that a party seeking to challenge an agency's decision on a particular issue at the superior court

---

[34]*See, e.g., Sky Valley v. Snohomish County*, No. 95-3-0068, Central Puget Sound Growth Mgmt. Hrg's Bd. Order on Dispositive Motions (Jan. 9, 1996), 2 GROWTH MGMT. HR'GS. BDS. 1495 (petitioner's standing not limited to issues regarding Gold Bar where petitioner's letter to county also identified broader concern with comprehensive plan); *Friends of the Law v. King County*, No. 94-3-0003, Central Puget Sound Growth Mgmt. Hrg's Bd. Order on Dispositive Motions (Apr. 22, 1994), 1 GROWTH MGMT. HR'GS. BDS. 341 (group did not have standing to challenge IUGA ordinance based on its participation with respect to comprehensive planning policies, East Sammamish Plan, or vesting of subdivision applications).

[35]*McGowan v. Pierce County*, No. 96-3-0027, Central Puget Sound Growth Mgmt. Hrg's Bd. Order on Motions (Sept. 5, 1996), 3 GROWTH MGMT. HR'GS. BDS. 2079, 2083.

level must have raised the issue before the agency.[36] But the growth management hearings boards are not courts and are not designed for the same formal judicial review of agency decisions. RCW 36.70A.270(7) does provide that the Administrative Procedure Act, chapter 34.05 RCW (APA), applies to proceedings before growth management hearings boards except where it conflicts with the provisions of the GMA. However, applying RCW 34.05.554 to growth management hearings board proceedings would render meaningless the standing provision set forth in RCW 36.70A.280(b)(2). Because it requires that petitioners raise specific issues before the county in order to raise them before the growth management boards, RCW 34.05.554 would render meaningless the Legislature's distinction in the GMA between a "matter" and an "issue."

### III. Subject Matter Jurisdiction

Kronenberg and Wells argue that the superior court did not obtain subject matter jurisdiction over the petition for review of the Board's order until May 27, 1998, when the Board served the order on Nooksack.[37] They therefore

---

[36]RCW 34.05.554 provides:

(1) Issues not raised before the agency may not be raised on appeal, except to the extent that:

(a) The person did not know and was under no duty to discover or could not have reasonably discovered facts giving rise to the issue;

(b) The agency action subject to judicial review is a rule and the person has not been a party in adjudicative proceedings that provided an adequate opportunity to raise the issue;

(c) The agency action subject to judicial review is an order and the person was not notified of the adjudicative proceeding in substantial compliance with this chapter; or

(d) The interests of justice would be served by resolution of an issue arising from:

(i) A change in controlling law occurring after the agency action; or

(ii) Agency action occurring after the person exhausted the last feasible opportunity for seeking relief from the agency.

(2) The court shall remand to the agency for determination any issue that is properly raised pursuant to subsection (1) of this section.

[37]Birch Bay Water & Sewer District and Whatcom County Water & Sewer District No. 13 raise a preliminary issue. They contend that Kronenberg does not

contend that the court did not have jurisdiction over the Whatcom County case when it issued its April 17, 1998 order requiring parties interested in continuing to participate to file a notice of appearance within 30 days. In her appeal from the Skagit County decision, Wells also argues that Whatcom County's motion to dismiss her petition was "untimely" because it was filed before Nooksack was served. Because we hold that the superior court's subject matter jurisdiction to review an agency decision is not dependent on the agency's service of its final order on all parties of record, we reject these arguments.

Under the APA, a petition for judicial review of an agency decision must be filed and served "within thirty days after service of the final order."[38] RCW 34.05.461(9) requires an agency to serve its final order on "each party" to the proceedings before it. RCW 34.05.473(1)(c) provides that the operative date for determining time limits for judicial review is "the date of service of the order." RCW 34.05-.542(2) neither refers specifically to RCW 34.05.461(9), nor does it expressly require service of the final order on every party to the proceedings before the agency. Kronenberg contends that under these statutory provisions, the 30-day period for filing a petition for review in a multiparty case cannot begin to run as to any party until the agency has served all of the parties with its final order.

This is a question of first impression. We have previously held that service of the agency's final order on the party

---

have standing to appeal the Whatcom County Superior Court's order remanding case. Kronenberg does have standing to challenge the court's authority to issue the April 17 order. The order remanding case contains a conclusion regarding Kronenberg's status as a party. Even assuming that the issues pertaining to the denial of Kronenberg's motions to revise the April 17 order and for a continuance are technically beyond the scope of his notice of appeal, we will consider them where the appellant assigns error and presents arguments on the issues raised. See RAP 2.4(a); In re Truancy of Perkins, 93 Wn. App. 590, 594, 969 P.2d 1101, review denied, 138 Wn.2d 1003 (1999); RAP 18.1.

[38]RCW 34.05.542(2).

petitioning for review is a jurisdictional requirement.[39] And our Supreme Court has held that a petitioner's failure to serve the petition for review on all parties to the proceedings before the agency deprives the superior court of subject matter jurisdiction.[40] But no appellate court in this state has addressed the question of whether an *agency's* failure to serve its final order on all parties to a multiparty appeal deprives the court of jurisdiction to consider a petition for review that has been served on all parties. We hold that it does not.

■ RCW 34.05.542(2) is ambiguous on this point because it can reasonably be read to start the 30-day period for filing a petition when the petitioning party is served with the final order or when all parties of record have been served with the final order.[41] Because the statute is ambiguous, we construe it to fulfill the intent of the Legislature.[42]

■ The terms of the statute and policy considerations weigh in favor of reading RCW 34.05.542(2) to begin the 30-day petition period with respect to an individual petitioner upon service of the final order on that petitioner. First, while the Legislature expressly requires service of the petition itself on "all parties of record," that language is not included in the portion of the statute dealing with service of the final agency order. Second, the purpose of requiring service of the final order is to notify the parties of the agency's decision.[43] Once a particular party has received the notice, it is not prejudiced by a requirement that it file a petition for review within 30 days of that notice. Nor does this rule prejudice the ability of other parties

[39]*Devore v. Department of Soc. & Health Servs.*, 80 Wn. App. 177, 906 P.2d 1016 (1995); *Leson v. Department of Ecology*, 59 Wn. App. 407, 799 P.2d 268 (1990).

[40]*Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 555-57, 958 P.2d 962 (1998) (citing *Union Bay*, 127 Wn.2d at 617-18).

[41]*See Vashon Island*, 127 Wn.2d at 771.

[42]*Health Ins. Pool v. Health Care Auth.*, 129 Wn.2d 504, 508, 919 P.2d 62 (1996).

[43]*See Leson*, 59 Wn. App. at 411.

of record to participate in review proceedings. Those parties will have notice of any petition for review of the agency's order. Finally, in cases involving large numbers of parties, there is a heightened possibility that an underfunded, understaffed agency will accidentally fail to serve one or more parties, as was the case here.

At oral argument, Kronenberg contended that an agency's failure to serve a party with its final order will inevitably result in a petitioner's failure to serve the petition for review on that party, thus depriving the court of subject matter jurisdiction. We reject this argument. As the facts of this case illustrate, a petitioner may serve all parties with the petition despite the agency's failure to serve all parties with its final order. In fact, Kronenberg acknowledged at oral argument that Whatcom County served Nooksack with the petition for review. Wells also served her petition on Nooksack, though belatedly. Prior decisions make clear that a failure to serve the petition on all parties deprives the court of subject matter jurisdiction. While the rule would apply to the situation Kronenberg describes, that is not the situation this case presents.

Finally, we reject Kronenberg's argument that starting the 30-day petition period for each potential petitioner on the date of service on each petitioner is contrary to the policy of discouraging piecemeal litigation. All parties will have notice of any petition for review and the opportunity to participate in such actions should they choose to do so. Further, the superior court can consolidate petitions for review as it did in this case, or it can compel the addition of parties or refuse to proceed.[44]

## IV. Continuance/CR 54(b)

■ As an alternative to the jurisdictional argument, Kronenberg asserts that the superior court lacked authority to enter its April 17 order requiring parties to file a notice of appearance or be dismissed from the case. We note that

[44]*See* CR 19, CR 20.

Kronenberg apparently makes this argument to support his challenge to the denial of his motion for revision under CR 54(b). We are not required to consider his argument because he did not brief the question whether this alleged lack of authority was a proper basis for a CR 54(b) motion, or whether the trial court erred in denying his motions to shorten time and for a continuance.[45]

██ ██ In any event, we hold that the trial court had authority to enter the April 17 order under RCW 2.28.010, which provides that the courts have power to enforce an order in the proceedings before them and to control the conduct of those connected with such proceedings. Nor was the order an abuse of discretion. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons."[46] The superior court indicated that it issued the order to determine which parties planned to participate in the case for case management purposes. Kronenberg proposes alternative actions the court could have taken to accomplish its purpose. But the abuse of discretion standard does not permit us to consider which of several acceptable alternative courses of action would have been best.[47]

Kronenberg also contends that parties to an administrative proceeding need not "appear" in superior court in order to participate in review of the administrative decision. Even assuming that this is true, it does not preclude the court from requiring that parties advise it if they wish to continue in the proceedings. All of the parties to the proceedings before the Board apparently had notice of the

---

[45]*See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (court will generally not consider claimed error for which appellant presents no argument).

[46]*In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

[47]*See Littlefield*, 133 Wn.2d at 47.

court's order. The order gave the parties ample time to respond. It was not an abuse of discretion.

## V. Standard of Review

 Kronenberg contends that the superior court exceeded its appellate authority by finding that Whatcom County's actions were supported by substantial evidence and were not clearly erroneous. Neither Kronenberg nor Wells raised this issue before the trial court. We will not consider issues raised for the first time on appeal.[48] In any event, because no party has appealed the trial court's substantive decision to remand the case to the Board, this alleged error is not a basis for reversal. While the record indicates that the superior court did exceed its appellate authority by making findings regarding Whatcom County's actions,[49] these findings are not at issue in this appeal.

## VI. State's Authority to Intervene

Whatcom County argues that the CTED did not have authority to intervene in the appeal of the Board's decision to the superior court under RCW 36.70A.310. That statute provides, in pertinent part:

> A request for review by the state to a growth management hearings board may be made . . . for the review of whether: (1) A county or city that is required or chooses to plan under RCW 36.70A.040 has failed to adopt a comprehensive plan or development regulations, or county-wide planning policies within the time limits established by this chapter; or (2) a county or city that is required or chooses to plan under this chapter has adopted a comprehensive plan, development regulations, or county-wide planning policies, that are not in compliance with the requirements of this chapter.

We reject Whatcom County's argument for two reasons.

---

[48]RAP 2.5(a).

[49]*Manke Lumber Co. v. Diehl*, 91 Wn. App. 793, 959 P.2d 1173 (1998), *review denied*, 137 Wn.2d 1018 (1999).

First, there is nothing in the record to indicate that the county objected to the CTED's intervention in the superior court proceeding and we need not consider arguments not raised before the trial court.[50]

■ Second, the statute clearly addresses the CTED's authority to participate in proceedings before a growth management hearings board. It says nothing about its authority to intervene in judicial review of growth management hearings board decisions. That issue is therefore governed by the court rules as it is procedural. Civil Rule 19 and Civil Rule 20 govern intervention and it is up to the trial court to decide whether a party may intervene under the rules. RCW 36.70A.310 does not preclude the CTED from participation in the judicial review process.

## VII. Skagit County Case

Wells filed a petition in the Skagit County Superior Court arguing that the Board should have suspended permitting single-family residences near Lake Whatcom. The court dismissed her petition for failure to raise this issue before the Board.

Wells initially responded to Whatcom County's motion to dismiss by attaching a page of her opening brief before the Board and arguing that she orally requested that the Board suspend permitting. However, at that point, the oral proceedings before the Board were not in the record.

After the court dismissed her petition, Wells moved for reconsideration, attaching additional documents. These included a portion of the oral proceedings before the Board and a copy of Wells' reply brief. The court rejected her motion for reconsideration.

Wells appeals only the order dismissing her petition. Because she has not appealed the denial of her motion for reconsideration and has not argued that the denial was erroneous, we do not consider that motion or the documents

---

[50]RAP 2.5(a).

attached to it. In addition, we do not consider Wells' argument, raised for the first time in her motion for reconsideration, that Whatcom County has violated CR 11. Thus, we consider only whether Wells adequately raised the single-family residence exemption in her opening brief before the Board, as this is the only relevant document Wells attached to her response to Whatcom County's motion to dismiss.

RCW 34.05.554(1) states: "Issues not raised before the agency may not be raised on appeal . . . ."[51] In *King County v. Washington State Boundary Review Board*,[52] our Supreme Court held that King County could not raise an issue before the court because it had failed to raise that issue before the boundary review board. King County never made its argument that proposed annexations were prohibited by ordinance, despite opportunities to do so.[53] The court rejected King County's argument that the annexation issue was before the boundary review board despite the fact that the ordinance appeared in materials before the boundary review board and the city proposing the annexation argued that the ordinance had no preclusive effect. In doing so, the court stated: "In order for an issue to be properly raised before an administrative agency, there must be more than simply a hint or a slight reference to the issue in the record."[54]

In her opening brief to the Board, Wells included a paragraph that she alleges set forth her argument that the RCW 36.70A.302(3)(b)(i) exemption was inappropriate for Lake Whatcom:

**The lake's public health and safety role, plus the above**

---

[51]Containing exceptions that are not relevant to this appeal.

[52]*King County v. Washington State Boundary Review Bd.*, 122 Wn.2d 648, 668-71, 860 P.2d 1024 (1993). The court has more recently addressed the requirement that issues raised on appeal be addressed before the administrative agency in *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 869, 947 P.2d 1208 (1997), but distinguished the facts of that case from *King County* because the administrative proceedings in that case were "more formal and more adversarial."

[53]*King County v. Boundary Review Bd.*, 122 Wn.2d at 669.

[54]*King County v. Boundary Review Bd.*, 122 Wn.2d at 670.

**interpretation of the SMA's policies (ergo of GMA) makes the exemption provided by RCW 36.70A-.302[3](b)(i) inappropriate for Lake Whatcom. I request that the Board specifically deny the County the use of this exemption in the Lake Whatcom watershed.**[55]

This paragraph, which incorrectly cites the relevant portion of the statute, is embedded in a section of the brief entitled "Lake Whatcom Watershed." The brief then refers to various water quality regulations and statutes, and reported water quality problems in the Lake Whatcom watershed. The superior court rejected Wells' argument that this paragraph adequately raised the issue on appeal.

We affirm the Skagit County Superior Court order dismissing the case. The paragraph cited above is insufficient to show that Wells raised the issue of single-family residence permits before the Board. It is merely "a hint or a slight reference" to Wells' argument. Not only did she incorrectly cite the statute she intended to refer to, but she never mentioned permits for construction of single-family residences. In addition, the quoted paragraph, while in bold print, is buried in a lengthy, single-spaced brief and is not set out as a separate heading or issue.

We also affirm the Whatcom County Superior Court's order reversing the Board's Final Decision and Order and remanding the case to the Board.

AGID, C.J., and WEBSTER, J., concur.

Reconsideration denied November 30, 2000.

---

[55]Petitioner Wells' Br., at 35.